IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AARON MATTHEW BROWN, # 332-527 | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. RDB-14-478 |
| J. PHILLIP MORGAN, et al. | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

The self-represented Plaintiff, Aaron Matthew Brown, Jr. ("Brown"), filed this Complaint pursuant to 42 U.S.C. §1983. Defendants Warden J. Phillip Morgan, Captain Barry Wood, Lt. Kelly Barciz, Sgt. Gary Durboraw, Sgt. Todd Ricker, Sgt. Paul Lawhorne, C.O. II Andrew Coldsmith, C.O. II Brooks Bowers, C.O. II George Burral, C.O. II Jason Ganoe, Detective Sgt. Scott Peterson, and Adjustment Hearing Officer Anne Maddox, by their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF 19).[1] Brown was provided an opportunity to reply pursuant to *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), and this court granted his subsequent request for an extension of time to reply. (ECF 21, 22, 23). Brown has not filed a reply.

This case is ripe for disposition. After review of the pleadings, exhibits, and applicable law, this Court determines that a hearing is unwarranted. Local Rule 105.6. For reasons to

---

[1] After preliminary screening of the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, this Court dismissed Brown's claims concerning property loss, pending state charges, and refusal to sign Administrative Remedy Procedure ("ARP") forms as to the property loss claim. (ECF 2). This Court also dismissed the Washington County Police and "Missing Personal Property" as Defendants. (ECF 5). As Brown's allegations against Officer Sweeny and Officer Bowers pertain solely to his missing property claims, Defendants Sweeny and Bowers will be dismissed from this case.

follow, Defendants Peterson, Sweeny and Bowers will be dismissed from this action. The remaining Defendants' dispositive motion, treated as a Motion for Summary Judgment, will be GRANTED and judgment will be ENTERED in favor of Defendants and against Plaintiff.

## BACKGROUND

### I. BROWN'S ALLEGATIONS

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). That review liberally construes Plaintiff's pleadings in light of the fact that he is proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Brown's claims arise from the time he was an inmate at the Maryland Correctional Training Center in Hagerstown, Maryland. (MCTC).[2] He alleges that on December 4, 2013, during the 4-12 shift at approximately 7:00 p.m., he was stopped and frisked by Officer Coldsmith. (ECF 1, p. 1). He claims that Coldsmith turned Brown's left pant pocket inside out and emptied the pocket. He claims Coldsmith then pulled Brown's identification (ID) and his "mouthpiece" from his pocket and continued the frisk search. *Id.* at 2.[3] Brown claims he watched Officer Coldsmith pick something up from the floor. *Id.* Coldsmith then told Lt. Barciz and Sgt. Lawhorne that he had pulled a plastic baggie from Brown's pocket. *Id.* Brown maintains that Coldsmith did not take the baggie from his pocket, but picked it up from the floor. *Id.* According to Brown, Lt. Barciz stated "so what the magic man made this appear [?]" *Id.* Brown was then taken to see Sgt. Lawhorne. *Id.*

---

[2] Brown has since been transferred to the Patuxent Institution.

[3] Coldsmith's version of the events is that he directed Brown to empty his pocket and the baggie fell out. (ECF 19-6, p. 6, 8; ECF 19-6, ¶ 2).

The baggie contained six folded pieces of magazine paper. Inside each paper was an orange substance later identified as Buprenorphine, a schedule III controlled substance. *Id.* Brown claims Sgt. Lawhorne allegedly told him the best thing to do was to "own up" to what was found during the frisk, or a new charge would be filed against him. *Id.* Notably, Brown acknowledges admitting to Lawhorne that the baggie belonged to him. *Id.* Brown also told Lawhorne that Coldsmith had lied when he said that he removed the baggie from Brown's pocket. *Id.*

Brown claims on December 31, 2013, Lt. Barciz accused Brown of filing a complaint claiming that Coldsmith had planted contraband on him. (ECF 1, p. 4). Brown states he told Barciz that he had "never stated that to anyone and if so, show me that I did." *Id.*

Brown maintains that he was coerced into pleading guilty at an adjustment hearing held on January 13, 2014, before Hearing Officer Anne Maddox. *Id.* at 5-6. Brown alleges that Maddox and Officer Grano, the Institutional Representative at the hearing, coerced him by making it clear that if he did not accept the offer of 180 days of disciplinary segregation for possession, Maddox would impose 365 days of disciplinary segregation and recommend investigation by Internal Affairs.[4] *Id.* Brown complains that on February 7, 2014, he was served with a summons to appear in Washington County District Court. *Id.* at 6.[5]

Brown also alleges that on February 7, 2014, at approximately 11:42 a.m., he asked Sgt. Ricker to sign a Request for Administrative Remedy (ARP) concerning the adjustment hearing, which Ricker refused to sign. Ricker allegedly told Brown that if he kept filing ARPs, he was

---

[4] Brown likely refers to the Department of Public Safety and Correctional Services (DPSCS) Internal Investigative Unit.

[5] On June 10, 2014, Brown entered a plea of guilty in the District Court for Washington County, Maryland to possession and receipt of a controlled substance while in confinement in Case Criminal Number 4V00085670, and received a six-month sentence. See http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId =4V00085670&loc=39&detailLoc=DSCR.

going "to get himself into something that [he] can't get out of" and threatened to throw Brown into "cell one for a couple of days." *Id.* at 7.

This Court directed Brown's to supplement his claim that he was coerced at his adjustment hearing. (ECF 2). On March 28, 2014, Brown filed the supplemental information on a complaint form which was assigned a new case number, RDB-14-969. In it, he claimed that Barciz "threatened" him that she "was going to do everything that she can to make sure [Brown gets] a new charge to go along with his segregation time." *Id.,* ECF 1, p. 4. Brown also claimed that on December 31, 2013, he was placed in Cell One on the A-tier with only his underwear, tee shirt, and socks in order to teach him not to make complaints against officers. *Id.,* ECF 1, pp. 5-6. The cell had no mattress or windows. There was only a steel bunk. Sergeant "Derbro"[6] placed a spit shield in from of the cell door and said "don't freeze to death dumb ass." *Id.* at 6. Brown claimed the cell was so cold that he had "chess" [sic] pains and felt like he was about to die. *Id.* He felt numb and banged on the cell door. *Id.* at 7. Officer "Barrel"[7] allegedly told Brown that no one was coming to see him "so quit banging and kicking the door" and "this is what you get when you make a complaint." *Id.* As relief, Brown requested damages and an removal of the officers from their jobs. (RDB-14-478 ECF 1, p. 9;RDB-14-969 ECF 1, p.3). Brown claims he was left in the cell for seven days and denied a shower and hygiene products during this time. *Id.* at 8. This court consolidated the two cases, RDB-14-969 and RDB-14-478, under RDB-14-478 , and ordered this case to proceed as to the following claims: 1) Brown was coerced at his adjustment hearing; 2) correctional officers retaliated against him for filing a federal complaint by placing him in Cell One on A-tier; and 3) the conditions in Cell One on A-tier violated the Eighth Amendment.

---

[6] This Court shall assume Brown is referring to Defendant Sgt. Gary Durboraw.

[7] This Court shall assume Brown is referring to Defendant George Burral, a correctional officer.

## II. DEFENDANTS' EXHIBITS

Defendants' undisputed exhibits and declarations in support of their Motion for Summary Judgment provide the following information.

On December 4, 2013, a suspected controlled substance, later tested and found to be Buprenorphine, a controlled dangerous substance (CDS), was recovered from Brown during a pat down search conducted by Officer Coldsmith at MCTC. (ECF 19-6, Exhibit 2, Serious Incident Report (SIR) #MCTC #13-087 dated December 5, 2013). Brown received a Notice of Infraction for violation of inmate rule #112 (possession of use of a drug or controlled substance). *Id.* at 7-9.

### A. COLDSMITH DECLARATION

Correctional Officer Andrew Coldsmith attests that on December 4, 2013, at approximately 7:00 p.m. he ordered Brown, who was leaving his tier for the gym, to wait to the side to be frisk searched. (ECF 19-7). As Brown turned his left front pants pocket inside out during the frisk search, Coldsmith observed a small plastic baggie fall to the floor from Brown's pocket. *Id.* Coldsmith states that he picked up the item, secured it in his pocket, and placed Brown in handcuffs. *Id.* Coldsmith attests the baggie contained six (6) pieces of folded magazine paper, each containing a small piece of suspected Buprenorphine. *Id.* A chain of custody was completed and was attached to the Notice of Infraction. *Id. see also*, ECF 19-6, pp. 7-8, 12. Brown was placed on administrative segregation pending an adjustment hearing pursuant to Lt. Barciz's instructions.

In his affidavit, Coldsmith states:

> The allegations made by inmate Aaron Brown, Jr., # 332527 that I did not retrieve the baggie from his pocket and that I planted the contraband is [sic] not true. When searching the pockets of inmate Aaron Brown, Jr., # 332527 a small plastic baggie fell to the floor and I picked the item up as stated in [paragraph # 2] above.

5

I did not plant contraband or ever state the contraband was pulled out of inmate Aaron Brown, Jr., # 332527 pockets as he alleges.

(ECF 19-7).[8]

### B. ADJUSTMENT HEARING RECORDS

Brown requested and was granted a postponement of his adjustment hearing on December 19, 2013. The adjustment hearing was held on January 13, 2014, at which time he waived his representation and witnesses and pled guilty to violating of rule #112. He waived his right to a formal hearing. (ECF 19-8, pp. 11-14). The plea was an agreement with the institution. *Id.* at 13, 15.

Brown received 180 days of disciplinary segregation[9] and 120 good conduct credits (GCCs) were revoked. *Id.* Plaintiff also received a mandatory suspension of visits for six (6) months based on his poor adjustment history. *Id.* at 2, 13.

### C. GANOE DECLARATION

Correctional Officer Ganoe served as the facility representative at Brown's adjustment hearing. Ganoe states that the duties of the facility representative include negotiating a plea agreement with the inmate in accordance with COMAR 12.02.2707J. (ECF 19-9, 19-10).[10] Ganoe attests:

As the Facility Representative for MCTC, I negotiate with the defendant inmate a

---

[8] Brown acknowledges in the Complaint that the baggie was his (ECF 1, p.2), and provided no documentation to repudiate Coldsmith's sworn statement.

[9] Brown's prison record shows that his disciplinary segregation time was reduced on April 18, 2014 to 136 days. (ECF 19-8, p. 15; ECF 19-12, ¶ 4; ECF 19-20). Upon information that Brown was targeted by a prison gang identified as Murder, Inc. and his safety could be jeopardized if he were placed in the general prison population, he was assigned to administrative segregation pending further investigation and consideration for an institutional transfer. (ECF 19-20).

[10] COMAR 12.02.2707J (1-7) provides in part: "The facility representative may negotiate with the inmate a plea agreement for a rule violation charged." (ECF 19-10, p. 4). Neither the inmate nor the facility representative is obligated to accept the plea agreement. *Id.* A plea agreement shall include waiver of a hearing and hearing rights and a recommendation to the hearing officer regarding the period and sanctions to be imposed. *Id.* The hearing officer and warden may impose an additional sanction. *Id.*

plea agreement for a rule violation charged. The defendant inmate is not obligated to offer or accept a plea agreement. At no time did I coerce inmate Aaron Brown, Jr., # 332527 into taking a plea agreement.

(ECF 19-9).

### D. RICKER DECLARATION

Sgt. Todd Ricker is Officer-in-Charge (OIC) of Housing Unit ("HU") #5. (ECF 19-13). Ricker attests that after Brown received the infraction for violation of rule #112 on December 4, 2013, he was placed in HU5A-1-28-B, the bottom bunk in a double cell until April 9, 2014. *Id.* On April 9, 2014, Brown's time on disciplinary segregation was reduced, and he was moved to HU5B-2-26S (single cell) on administrative segregation status. *Id.; see also* ECF 19-5, pp. 3-4; ECF 19-12 ¶¶4-5).

Ricker attests that he has never refused to sign or process an ARP for Brown or ever questioned him about the subject matter of any ARP he wanted to file. (ECF 19-13). Ricker denies making the statement, "if you keep it up with the complaints, you are going to get yourself into something that you can't get out of" or threatening to throw Brown into "cell one for a double days" as Brown has alleged. *Id.* ¶5. Further, Ricker attests that Brown was never placed in Housing Unit 5, Cell 1 on A-Tier, as Brown alleges. *Id.; see also* ECF 19-5.

### E. WOOD DECLARATION

Captain Barry Wood, Supervisor of Investigations and Mail Room Supervisor on December 4, 2013, attests that at no time did he place an inmate mail cover [11] by him on Brown for investigative purposes, nor was any other alternative measure instituted that would hinder Brown's mail leaving from leaving the housing unit or the institution. (ECF 19-12). Wood states

---

[11] This Court notices that a "mail cover" indicates that an inmate's mail is to be set aside for reading. An intelligence officer generally returns the mail within one hour after review. *See e.g. Pair v. Rose*, 2015 WL 898081, Civil Action No. WDQ-14-1537 (March 2, 2015) (referencing Division of Correction Directive mail policy set forth in DCD 250-1).

that on April 8, 2014, he recommended a reduction in Brown's disciplinary segregation sentence and his assignment to administrative segregation based on information that his safety could be jeopardized if he were placed in the general population at MCTC. *Id.*

### F. FAISON, DURBORAW, LOHMAN, and HENDERSHOT DECLARATIONS

Lt. Charles Faison and Sgt. Gary Durboraw were managers on Housing Unit # 5 on their on December 4, 2013, when Brown was placed on disciplinary segregation. Faison worked the 12-8 shift while Durboraw worked the 4-12 shift. (ECF 19-14, 15). Faison and Durboraw attest they did not harass Brown, and to the best of their knowledge, no officer under either's supervision harassed Brown. *Id.*

Faison and Durboraw state that MCTC policy requires inmates to submit ARP requests to the unit manager or sergeant in the housing unit during the 8-4 shift only. *Id.*; *see also* ECF 19-16. Faision and Durboraw each declare that Brown did not report to them that he was being harassed or that officers were interfering with his access to the ARP process. *Id.*

Captain Joseph Lohman, supervisor of Housing Unit # 5 on December 4, 2013, denies harassing Brown. (ECF 19-17). Lohman attests that to the best of his knowledge no officer under his supervision harassed Brown or refused to process or sign his administrative remedy (ARPs) complaints. Lohman attests that Brown did not report to him that he was being harassed or that officers were interfering with his access to the ARP process. *Id.*

Lt. Willis Hendershot, Housing Unit # 5 manager on the 4-12 shift attests that he has never harassed Brown. (ECF 19-18). Hendershot states that to the best of his knowledge no officer under his supervision harassed Brown. Hendershot attests that Brown did not report to him that he was being harassed or that officers were interfering with his access to the ARP process. *Id.*

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott*, 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by *pro se* litigants. *See Erickson*, 551 U.S. at 94 (2007). The requirement of liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). This Court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

Defendants assert this case is subject to dismissal due to failure to exhaust administrative remedies. (ECF 19). The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, *et. seq.*, provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Brown is subject to the strict requirements pertaining to exhaustion of remedies. The PLRA's exhaustion requirement "has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003), aff'd, 98 F. App'x 253 (4th Cir. 2004). If the appeal is unsuccessful, the prisoner must, within thirty days, file an appeal with the Executive Director of the Inmate Grievance Office ("IGO"). *Id.* Of import here, "failure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216, (2007). A claim that has not been exhausted may not be considered by this court. *Id.* at 220.

The exhaustion requirement "require[s] prisoners to pursue administrative grievances until they receive a final denial of their claims, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D.Md. 2003). It does not, however, require the exhaustion of administrative processes unavailable to a prisoner. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015) (quoting *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Administrative remedies must be available to the prisoner. This court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See id.* 478 F.3d at 1225; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d at 725 (4th Cir. 2008).

Defendants have filed a declaration executed by Scott Oakley, Executive Director of the Inmate Grievance Office ("IGO"). (ECF 19-19), in which he attests that IGO records show Brown filed three grievances.[12]  Relevant here is IGO No. 20140414, which was filed as an "appeal" from the disposition of ARP-MCTC-1238-13. In that ARP request, Brown complained that he had been charged with a violation of an unspecified inmate rule in retaliation for filing an ARP request about his personal property. (ECF 19-19). The IGO grievance was administratively dismissed on June 2, 2014, after Brown failed to respond to a letter from the IGO for additional paperwork. *Id.*

Brown claims are that his efforts to resolve his concerns through the ARP procedure were rebuffed by corrections officers. Because Brown has argued his attempts to access the ARP

---

[12] The other IGO grievances concerned an infraction given to Brown for possession of tattoo paraphernalia and missing personal property. (ECF 19-19).

process were hindered and was thus unavailable to him, this case will not be dismissed for the failure to exhaust administrative remedies.

## I. CLAIM OF COERCION AT ADJUSTMENT HEARING

To the extent Brown alleges that he was denied due process when he was coerced into pleading guilty at his disciplinary hearing (ECF 1), his claim is unavailing. In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. *Wolff v. McDonnell*, 418 U.S. 539 (1974). The protections include advance written notice of the charges, a hearing, the right to call witnesses and present evidence, and a written decision. *Id.* at 564–71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir.2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n. 5.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D.Va.1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir.1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

The record demonstrates that Brown received advance notice of the charges against him and his right to a hearing, to call witnesses and to present evidence. This comports with the

requirements of due process in a prison disciplinary setting. (ECF 19-8, pp. 4, 11). The verified exhibits and declarations show that he entered a plea agreement with the institution and received 180 days of disciplinary segregation as part of the plea agreement. (ECF 19-8, p. 13).

Brown's conclusory claim that he was improperly pressured or otherwise coerced into entering his guilty plea is unsubstantiated, and he fails to refute Officer Gano's declaration denying there was any coercion. Insofar as Brown faults Defendants for bringing subsequent criminal charges against him in the District Court of Maryland for Washington County, there are no facts to establish the correctional officer defendants brought criminal charges against him.[13] Brown identifies no violation of constitutional or federal law by such action, and none is apparent here.

Further, insofar as Brown intends to claim Defendants violated their own policies, procedures, rules and regulations, mere violation of state law or regulation does not provide a basis for a due process violation. *Weller v. Dept. of Soc. Services*, 901 F.2d. 387 (4th Cir. 1990). *see also, Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[i]f the state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide that law is not a federal due process issue"). In any case, no violation of state law or regulation is suggested given the record before this Court.

## II.    RETALIATION CLAIM

In order to prevail on a claim of retaliation, an inmate "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that

---

[13] The criminal charges against Brown were brought by Sgt. Scott Peterson, a member of the Washington County Police. (ECF 1, p. 6; *see also* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=4V00085670&loc=39&detailLoc=DSCR. Brown's claims he was subjected to double jeopardy and constitutionally impermissible excessive bail (ECF 1, p. 6) are without merit. As Plaintiff's claims in his Complaint regarding his pending state charges were dismissed by this Court on April 7, 2014 (ECF 2), Peterson shall be dismissed as a defendant to the instant proceeding.

the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Retaliation is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *ACLU of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993)

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d at 74. A plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). To establish a *prima facie* case of retaliation, a plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of defendants. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Further, an inmate must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir. 1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id.* at 532.

Brown next claims he was subjected to verbal threats, general harassment and retaliation by officers because he filed a federal complaint. (ECF 1).[14] This claim is directly refuted in the uncontroverted declarations filed by corrections personnel Coldsmith, Wood, Ricker, Fasion,

---

[14] Verbal harassment by corrections officers, if true, is undoubtedly unprofessional and vile, but without more does not amount to constitutional abridgement.

Durboraw, Lohman, and Hendershot. (ECF 19-7, 12, 13, 14, 15, 17, 18). Further, Brown does not allege Defendants acted to execute the threats or that he sustained physical injury as a result.

"[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Mere verbal abuse and taunting inmates by guards, including aggravating language, does not state a constitutional claim. *See McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (stating "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983") (citing *Collins v. Cundy*, 603 F .2d 825, 82 (10th Cir.1979); *cf. Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir.1978) (stating allegations that a guard threatened to have an inmate killed were sufficient to state a § 1983 claim).

To the extent Brown claims that he was placed in Cell # 1 on A-Tier in retaliation for filing a complaint (ECF 3), his assertion is contradicted by the uncontroverted record which shows that Brown was never placed in Cell # 1 on A-Tier, a special confinement cell. (ECF 19-5, 19-13).

Lastly, insofar as Brown intends to claim that while in Housing Unit 5, his outgoing mail was improperly handled upon orders of Captain Woods and corrections officers refused to accept his ARPs for processing based on retaliatory animus, Brown does not claim that he missed any legal filing deadlines or otherwise suffered actual prejudice as to particular legal claims as a consequence of the alleged actions. *See e.g. Lewis v. Casey*, 518 U.S. 343, 355 (1996) (stating in order to demonstrate a First Amendment claim of denial of access to the courts actual injury must be shown). Moreover, Brown does not refute the declarations of correctional staff

15

members Wood, Ricker, Faison, Durboraw, Lohman, or Hendershot who categorically deny interfering with Brown's outgoing mail or his ability to file ARP requests. (ECF 19-12, 13, 14, 15, 17, 18). Brown's claims of mail mishandling and refusal to accept his ARPs for processing fail to show a constitutional abridgement and do not support a claim of constitutionally impermissible retaliatory animus. For these reasons, even when Brown's allegations are viewed in the light most favorable to him, no genuine issue of material fact is presented and Defendants are entitled to judgment in their favor as a matter of law.

### III.   CLAIMS CONCERNING DISCIPLINARY SEGREGATION

The Eighth Amendment proscribes conditions that result in an "unnecessary and wanton" infliction of pain, including practices that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 34 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

In order to establish the imposition of cruel and unusual punishment, a prisoner must prove serious deprivation of a basic human need and that subjectively the officials acted with a sufficiently culpable state of mind. *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). A prisoner must satisfy the objective component by showing deliberate indifference on the part of each prison employee alleged to have been part of the Eighth Amendment deprivation. *Id.*, *see also*, *Farmer v. Brennan*, 511 U.S. 825, 839 (1994).

Brown complains he was placed in Cell One in Housing Unit 5 with only his underclothes and socks. As earlier noted, Brown's undisputed prison records show that he was never placed

16

in this cell. Brown states only he was placed in the cell with only his underclothes and socks, and it was so cold that his "chess [chest]" hurt. Apart from his own assertions, Brown offers no corroboration of physical injury or other evidence he was placed in this cell.

To be sure, prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484; (1995); *Wilkinson v. Austin*, 545 U.S. 209 (2005). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily ... fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502, 503 (4th Cir. 1997); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ( "There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors ... requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). "[Harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015). Rather, inmates must first establish that an interest in avoiding onerous or restrictive confinement conditions "arise[s] from state policies or regulations" (e.g., a regulation mandating periodic review). *Id.*

Recently, in *Incumaa v. Stirling*, _ F.3d _, 2015 WL 3973822 (July 1, 2015), the United States Court of Appeals for the Fourth Circuit applied the general prison population as a comparable baseline for atypicality where the plaintiff was sentenced to the general prison population and had been transferred to security detention while serving his sentence. *Incumaa*, 2015 WL 3973822 * 9, quoting *Prieto*, 780 F.3d at 252 ('[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where

the inmate asserting a liberty interest was sentenced to confinement in the general population and later transferred to security detention). In Brown's case, he was confined to a definite, and later reduced, short-term term of segregation following disciplinary proceedings which resulted in his entry of a plea. The sole complaint Brown raises about his segregation housing is his difficulty sending mail and filing ARP requests. Not only are these concerns resoundingly controverted by declarations filed by Defendants, but Brown's allegations fail to suggest circumstances so different than those in the general prison population that they are atypical in comparison.[15] Thus, this Court concludes that even when Brown's allegations are reviewed in the light most favorable to him, there are no genuine issues of fact and Defendants are entitled to summary judgment in their favor as a matter of law.[16]

## CONCLUSION

For the foregoing reasons this Court will DISMISS Defendants Peterson, Sweeny and Bowers as parties to this action. The remaining Defendants' dispositive motion, treated as a Motion for Summary Judgment, will be GRANTED and judgment will be ENTERED in favor of Defendants and against Plaintiff. A separate Order follows.

July 14, 2015  
Date

_____  
RICHARD D. BENNETT  
UNITED ST ATES DISTRICT JUDGE

---

[15] This Court takes notice that complaints about prison mail and ARP procedures are often raised in this Court by self-represented inmates in the general prison population of various correctional institutions.

[16] This Court need not reach Defendants' defense of qualified immunity for reasons apparent herein.